CARTER v. FORTNEY et al.

(Circuit Court, N. D. West Virginia. September 9, 1909.)

INJUNCTION (§ 152*) — PRELIMINARY INJUNCTION — RESTRAINING UNLAWFUL ACTS OF STRIKING WORKMEN.

A preliminary injunction granted on conflicting affidavits restraining striking miners formerly in the employ of a coal company from interfering with the property of the company or assaulting, threatening, or intimidating its employés pending final hearing on a bill for a permanent injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 337; Dec. Dig. § 152.*

Restraining boycotts, strikes, and other combinations by employés interfering with commerce or business, see note to Shine v. Fox Bros. Mfg. Co., 86 C. C. A. 313.]

In Equity. On motion for preliminary injunction.

P. J. Crogan and F. E. Parrick, for plaintiff.
Charles E. Hogg, for defendants.

DAYTON, District Judge. After the overruling of the demurrer in this cause (for opinion, see 170 Fed. 463), by order entered July 20, 1909, submitting motion for a preliminary injunction, the defendants, save and except George Kerchival, Claude Mankins, and John S. Douglass, have filed, to be read as their joint affidavit upon this hearing, their joint answer, sworn to by nine of their number, to the plaintiff's bill, in which they distinctly and explicitly deny all allegations of conspiracy, all charges and all and any acts, words, or declarations

of threats, menaces, intimidation, insulting language, jeers, hootings, and assaults and violence charged against them therein. The defendant George Kerchival has filed his separate answer, to be read as his affidavit upon the hearing of this motion, to the same effect. In addition, these defendants have filed, in resistance of this motion, the separate affidavits of the defendants Charles Watkins and James Tuhill, Sr., in which they explicitly allege that all the allegations in the bill imputing intimidation, coercion, or interference on their several parts are untrue.

The defendant Charles Watkins alleges himself to be a law-abiding citizen, married, with one child, and that he is a property owner in the town of Tunnelton, where he has lived substantially all of his life; that he is a churchgoer and member of the town council of Tunnelton; that there has been no such disturbance as charged in the bill within the corporate limits of said town so far as he knows that could not be controlled by the local authorities, but that, on the contrary, good order has prevailed in said town, except so far as disturbed by drunken men brought in by the coal company from other places to take the place of the striking miners; and that these men have indulged in shooting on the streets, have assaulted the police officers, and indulged in other acts of lawlessness against good order and the peace.

The defendant James Tuhill, Sr., in his affidavit substantiates these statements, and alleges that for 13 years he has been a citizen of the town of Tunnelton, and that the superintendent of the coal company has admitted that he has never seen affiant do anything to interfere with the men who are employed by the coal company, and that he only knew what he has been told by others.

In addition to this, the defendants have filed the affidavit of Hubert Pentony, who states that he is a resident of the town of Tunnelton, and has been a resident of said town for 11 or 12 years; that he was town sergeant from April 1, 1908, to March 31, 1909, and knows all the defendants in this suit; that he has heard the bill read, and from his own knowledge states that the charges of fraud, violence, intimidation, and coercion charged in the bill are untrue; that he has had full opportunity to see the defendants and striking miners from the time the strike began until the present, and that he has observed no act or attempt by force, fraud, intimidation, or other unlawful means to induce the employés of the said coal company to quit work or prevent others from going to work for it. He states that many persons have been brought into the town to work at said mines to take the place of the striking miners, and that those persons have indulged in promiscuous and aimless shooting, and that the managers and agents of the coal company have done nothing to arrest them or taken any steps to have them punished; that there has been no violence, fraud, intimidation, or coercion of any sort used toward persons coming in on the passenger trains of the railroad; that the former mayor of the town, now an attorney for the coal company, refused to put on additional police force at the expense of the company on the ground that it was not necessary, and the affiant says that it was not necessary, and that he, as town sergeant, could take care of the situation himself, as there was no such violence or evidence of danger to property or persons as required

any assistance to enable him to maintain order as the police officer of the town of Tunnelton.

The affidavit of Joseph A. Miller states that he has been a resident, except for six years, of Preston county all his life; that he is married, and is and has been holding the office of justice of the peace within the county of Preston since January 1, 1909; that he knows all the defendants and T. R. Barber, the superintendent of the coal company; that the coal company brought into the town of Tunnelton persons from different sections of the country to take the places of the striking miners; that these men so brought into said town did promiscuous and aimless shooting in the streets; that he personally saw and talked with Barber touching this shooting as a public officer; that Barber would make no complaint against any one so shooting; that he has been at his home at Tunnelton almost continuously since the 1st day of January, 1909; that he never saw any misconduct on the part of the defendants indicating an effort to intimidate, coerce, or do violence to the employés of the coal company; that he has heard the charges read which are contained in said bill, and that there is no particle of truth in any of the statements so made against the defendants in said bill, except that he heard some of the boys about the town of Tunnelton bleating like sheep, but he does not know at whom they were bleating, nor can he say that they are any of the parties who are defendants to this bill. He further states upon his own accord and explicitly that most of the defendants named in the bill are among the most law-abiding and peaceable citizens in his part of the state of West Virginia; that they are industrious, reliable, and skillful miners, and a number of them own their own homes.

The affidavit of W. E. Smith states that he has been a resident of Tunnelton for seven years past; that he is a coal miner, knows all the defendants; that he has heard the bill in this cause read, and that there is no foundation in fact for its allegations of fraud, coercion, intimidation, conspiracy, or other unlawful acts; that George Kerchival, one of the defendants, while at one time in the employ of the coal company, is mayor of the town of Tunnelton, is an upright, law-abiding citizen, and diligent in the discharge of his duties; that no necessity exists for guards to protect the company's property, and that law and order are maintained by town authorities.

The affidavit of J. N. Thorn states that he is a restaurant keeper, resident in Tunnelton for four years past, knows all the defendants, and knows them to be peaceable and law-abiding citizens; that he has heard the bill read, and that, so far as his own knowledge extends, the charges of violence, coercion, and intimidation therein contained are not founded in truth; that since the awarding of the injunction he has not observed anything on the part of the defendants indicating an intention or purpose of interfering with the operation of the company's mining plant or to coerce or intimidate its employés; that he is and has been since January 1, 1909, a constable for Preston county, has never been called upon nor has it been necessary to arrest any of the defendants since then, but that outside "strike breakers" have created more trouble than has been known in Tunnelton for the same length of time since he has been resident thereof; that he has for three nights deemed it

imprudent to go to bed because of the lawlessness of these outside parties for whom he has now in his possession warrants of arrest for several persons.

The affidavit of the defendant George Kerchival states that he is a resident of Tunnelton for eight years past, has been mayor thereof, since February, 1909, knows all the defendants, knows them to be peaceable, law-abiding citizens, has heard the bill read, and that its allegations of fraud, violence, intimidation, and conspiracy are not true, and he knows them not to be true; that since the awarding of the injunction he has observed nothing on the part of the defendants indicating any intention or purpose of interfering with the company's plant or of intimidating any of its employés. He then reiterates the charges substantially set forth in the preceding affidavits against the "strike breakers," and specifically charges that one of them was attempted to be shielded from arrest by him and his officers by the suprintendent of the company.

The affidavit of O. G. Ashley states that he is a resident for 23 years of Tunnelton, prior to January 1, 1909, was constable of Preston county, knows all the defendants, has heard the bill read, that all the charges thereof against the defendants of fraud, intimidation, conspiracy, coercion, threats, and other unlawful acts have no foundation in truth or fact, and reiterates the charges against the strike breakers.

And the affidavit of E. M. Durr says that he is a resident of Tunnelton for 30 years, was formerly a railroad brakeman, now a miner; knows the defendants; that they have been peaceable and law-abiding; that they have not by threats, combination, coercion, intimidation, fraud, or violence interfered with the company's property or employés; that he has heard the bill read, and its charges to this effect are not founded in truth. He repeats the charges against the "strike breakers."

On the other hand, the plaintiffs have filed, heretofore in this cause with a view to asking rules for contempt and on said 20th day of July, 1909, in support of this motion:

The joint affidavit of Mrs. Mary Martin, Mrs. Lona Mayfield, M. L. Mayfield, George Zetty, George Laughry, Nathan Laughry, Robert Zetty, Ernest Davis, George Combs, and Harry Hall to specific acts after the restraining order became effective, first, on the part of defendant Claude Mankin, who said to Mrs. Martin and Mrs. Mayfield, wives of working miners, "You G—— d—— scabs get out of the door," and to Mrs. Mayfield, "Take in the children," that they (Mankin and others) were fighters and would kill the children, who were "d——n scabs"; second, on the part of defendants Mankin and John S. Douglass, who each assaulted George Zetty because he was an employé of the company; third, on the part of said Mankin and Douglass, who assaulted, struck, and run out of a restaurant George and Nathan Laughry, company employés, calling them "scabs," and declaring their intention to kill all "scabs"; fourth, on the part of the defendants Mankin and "Bum" Layton, who at 10 o'clock at night stopped Robert Zetty and Ernest Davis, assaulted and searched one and overtook the other running away, threw him down and choked him; on the part of said defendants Mankin and Douglass, who attacked George Combs

and Harry Hall, employés of the company, and called Combs "a G——
d—— black-hearted scab."

The affidavit of Edward Edwards, which sets forth that defendant
Douglass, the defendant Mankin aiding and abetting, struck him in a
restaurant, and called him a "G—— d—— scab," on March 13, 1909,
after the restraining order became effective.

The affidavit of B. F. McNemar, a watchman for the company, which
says that defendant Joe Selvey after the restraining order became ef-
fective called those working for the company "yellow dogs."

The affidavit of J. H. Glendenning, who says that the defendant Sel-
vey, after the restraining order, stopped him in the county road, and
denounced him and the others working for the company as "scabs and
blacklegs."

The affidavit of A. F. Cutlip, who says defendant Selvey, after the
restraining order, denounced him and the others working for the com-
pany as "two-legged dogs."

The affidavit of C. Clayton Jones, who states that the defendant
Victor Huffman, after the restraining order, called the daughter of
Charles H. Jones, an employé, "a d——n scab" and a "water sheep,"
frightening her until she went crying into the house.

The affidavit of Charles H. Jones, who says that the defendant Huff-
man called him "a d——n scab," and attempted to hit him with a stone
when he was passing from his work, this after the restraining order.

The joint affidavit of A. F. Cutlip and J. W. Schroder, employés,
who says that the defendant Wilbur Mease denounced them as "G——
d—— scabs," and said the company did not work anything but "scabs
and yellow dogs," followed them to a restaurant, and said: "Look at
the G—— d—— yellow dogs."

The affidavit of Mrs. Earl Wiles, in which she states she heard the
defendant Harvey Halbritter say that "some one ought to put a stick
of dynamite to the dam of the company and blow it out," and that "he
would not be a bit too good to do it"; and on another occasion that
"some one ought to put a stick of dynamite under Shumaker's office,"
Shumaker being the company's bookkeeper.

The affidavit of W. E. Imler, who states he was electrician for the
company, and while returning from church was struck by a stone
thrown by some one whom he could not discover or identify, but who
called him a "scab."

The affidavit of Lloyd Zetty, who states that the defendants prior to
the restraining order were accustomed to congregate in numbers upon
the streets and sidewalks of the town, and of insulting, threatening,
and annoying the company's employés, and of threatening to destroy
the property and mine of the company, and do injury and violence to
its employés; that about November 5, 1908, while the defendants Os-
burn Fortney, Wm. F. Fowler, Walter Duvall, Wilbur Mease, and
Clarence Milter were together in a crowd on the street, Fortney and
Fowler threatened that they "would kill every s—— of a b—— that
was working up there."

The affidavit of Charles Price, who says he is the son of U. G. Price
long in the employ of the company, and in January, 1909, while stand-
ing on a store platform near the mine, he was struck by one of the

stones thrown by parties down the street, whom he believes to have been some of the defendants; that the defendants were accustomed to gather great crowds upon the streets, and by insults, threats, and violence seek to make men quit work for the company, and that they frequently made threats of injury against the company's property.

The affidavit of Charles H. Jones, who says that he was a miner for the company, resident of the town for several years, and while returning from his work on January 21, 1909, he was met by defendant Charles Watkins, who took hold of him and called him "a G—— d—— black s—— of a b—— and a d——n dirty liar," and said to him "G—— d—— you, I have a notion to kill you right here," and that his only provocation or purpose of this assault was to intimidate him as an employé of the company. He states that assaults were made upon Wm. Zetty, A. J. Johnson, Stewart Bonnafield, W. E. Imler, John Brown, John A. Riley, Frank Kiley, and Charles Price, employés.

The affidavit of John A. Riley, a resident for several years of Tunnelton and a company employé, who says that in August, 1908, an attack was made upon him by the defendant Eli Drake on the railroad track, who beat, wounded, and injured him solely because he was working for the company; that while making such assault Drake called him a "scab" and other terms of vilification.

The affidavit of A. J. Johnson, a resident of Tunnelton for several years, who says that on September 16, 1908, the defendant John M. Herndon made an assault upon him when he was in a weakened condition physically by reason of a recent sufferance of typhoid fever and seriously beat and wounded him, this in front of the Baltimore & Ohio passenger depot, without provocation or reason except his rage on account of affiant's working at the company's mine; that while making this assault Herndon called him "scab" and other vile names.

The affidavit of John Brown, a resident of Tunnelton for several years, who says that in August, 1908, while riding along the street on a bicycle, he was assaulted by the defendant "Bum" Layton, struck by a stone, wounded and injured by him, without cause, except that he was working at the mine.

The affidavit of M. V. Shaffer, a resident of Tunnelton for several years, who says that in August, 1908, in the nighttime, three masked men came to the power house where he was working, sought admission, but, being prevented by the night watchman, fired off a pistol near the door, and gave the night watchman a letter for affiant threatening him and other company employés that, if they did not cease working immediately, they would be killed, and that, if they permitted the fact to be known that such letter had been delivered to them or such visit had been made to them at the power house, they would be killed immediately.

The affidavit of Frank Kiley, an employé, who says that on November 3, 1908, that while walking along the sidewalk, without provocation, he was struck by the defendant Harry Wilds and knocked off the sidewalk into a ditch or sewer; that while he worked for the company in the summer of 1908 prior to the restraining order herein he was daily insulted, threatened, and abused upon the streets by the defendants and their sympathizers in order to intimidate and prevent his work-

ing; that the defendant James Tuhill, Sr., threatened and told him "don't you go to work any more, or you will get your head knocked off"; that defendants daily congregated on the streets, insulted the company's employés, calling them "yellow dogs," "scabs," "blacklegs," and other vile epithets not fit to be written; threatened said employés with beatings and injury; that they would have "their heads knocked off," "their heads broken," and would be killed if they did not quit work; that they frequently threatened that they would destroy the property of the company, would blow up the dam, blow up the office, and destroy the company houses in which its employés lived.

The affidavit of T. R. Barber, superintendent of the company, which sets forth that the company by reason of the strike closed down its mine from March, 1908, to August, 1908, when it started operations again, but was so harassed by the combination and conspiracy of the defendants to prevent workmen from working by their daily assembling at or near the mine and upon the highways leading to it and jeering, hooting, insulting the workmen, calling them "yellow dogs," "scabs," "blacklegs," "black sheep," and other vile epithets not fit to be written, that the company again suspended operations until the last week in December, 1908, when it again undertook to operate its mine; that many of its men went back to work, but many, including the defendants, declined to do so and began again to threaten, insult, and intimidate those who did go to work by daily assembling upon the highways at or near the mine and calling the men the names set forth and threatening to kill them; that he himself was often threatened with violence, and this conduct was likewise indulged toward his wife and family; that employés were attacked and assaulted while going to and from work, and he sets forth specifically assaults made by defendant Charles Messenger upon D. C. Williams, who was thrown or pushed from the sidewalk into a deep ditch and called a "G—— d——n little blackleg son of a bitch" by Eli Drake upon John A. Riley, who was beaten, abused, and greatly injured, by John M. Herndon upon Albert Johnson, who was beaten and injured, upon Phillip Rhodes at night by unknown men in force and numbers and who fired leaden bullets into and through his dwelling house, the wife and children of Rhodes being in the house, by Henry Wiles upon Frank Kiley, who was pushed from the sidewalk; that besides these many other assaults were made or attempted upon various other employés, the person making which could not be identified, but the employés were constantly met, insulted, threatened with death, if they did not cease work; that such assaults were made upon Geo. W. Zetty, W. P. Bridge, D. C. Arbogast, Charles Buzzard, W. E. Imbrey, and others; that the officials of the town would or could not protect said employés; the company obtained the services of two deputy sheriffs of the county who were unable to preserve order; that threats were made of destroying the company's property; that it was greatly hampered in its operations in complying with its contracts, and, without the restraining order herein, he believes it would have been impossible for it to continue its operations at all; that since such order most of defendants have ceased their unlawful conduct, but certain ones named have in contempt of it violated it in certain particulars set forth.

A large number of the foregoing affidavits in addition to the specific acts set forth therein assert that defendants with many others by them incited constantly and continuously congregated in crowds upon the streets and sidewalks where employés of the company had to go to and from work to their homes and threatened them with serious injury if they did not quit work, reviled them as "scabs," "blacklegs," "yellow dogs," and other vile names; frequently pushed, struck and assaulted them; that they daily congregated about the depot of the railroad at such times as trains were scheduled to stop, and whenever any one would alight whom they had reason to believe intended entering the service would crowd around such person or persons, and by entreaties, persuasions, abuse, threats, and vilifications strive to prevent them from entering such service, and to compel them to leave; that they would display large banners with written warning thereon to persons not to enter the service of the company; that, on account of these conditions, deputy sheriffs of the county were sent there who were unable to maintain order, and the Baltimore & Ohio Railroad Co. was compelled to and did send and stationed there a special policeman in and at the depot. These general statements of disorderly conduct are substantiated in addition by the separate affidavits of Thomas Fisher, a merchant; of Everett Walker, a physician; of J. W. Miller, a merchant; of M. C. Gibson, a merchant; of W. E. Noel, a hotel keeper; and of C. A. Fleegle, a railroad agent—all of whom state they have no connection of any kind with the company.

The condition of things revealed by these affidavits is startling. Ten of the defendants by reason of their verification of answers, together with the mayor of the town, a member of its council, its sergeant, the resident justice of the peace, the resident constable, and four others, have emphatically and in unqualified terms under oath stated the allegations made in plaintiff's bill of lawless conduct on the part of defendants to be absolutely false and untrue, that defendants are peaceable, law-abiding citizens with the very best character, and the town government of Tunnelton in effect has been both competent and efficient. On the other hand, 31 persons have set forth under oath a condition of affairs which, if true, shows these defendants or most of them to be in principle utterly regardless of the law and the rights of their fellowmen, as prone to lawless deeds almost as the sparks are to fly upward, and also shows the officers of the town and those of the county resident at Tunnelton to have been absolutely false to their official duty and their administration of justice and maintenance of law and order to have been the baldest farce. It is impossible to reconcile the statements of these conflicting affidavits. It cannot be done. There is clear perjury somewhere, and it should be sifted out and prosecuted.

It seems to me that there is nothing for me to do but to award this preliminary injunction, require the parties to take the evidence, and determine finally the case upon its merits.